UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| STEVEN C. FUSTOLO, ) | Chapter 7 |
| ) | Case No. 13-12692-JNF |
| Debtor. ) | |
| ) | |
| THE PATRIOT GROUP, LLC, ) | |
| ) | |
| Plaintiff, ) | Adversary Proceeding |
| ) | No. 15-01015-JNF |
| v. ) | |
| ) | |
| STEVEN C. FUSTOLO, and ) | |
| JOHN DOES 1-10, ) | |
| ) | |
| Defendants. ) | |

**<u>CREDITOR THE PATRIOT GROUP, LLC'S MOTION FOR INJUNCTIVE RELIEF</u>**

Pursuant to Bankruptcy Code sections 105(a), 303(b), 523(c) and 727(c), Creditor The Patriot Group, LLC (Patriot) hereby moves this Court for the entry of an order enjoining Debtor Steven C. Fustolo and those acting in concert with him from, among other things, continuing to publish via the Internet, US mail, or otherwise, defamatory statements about Patriot, its Chief Executive Officer, John C. Howe, and related persons. Patriot also seeks an order directing defendants to immediately remove the untrue articles from publication and cease and desist from any further publications.

Beginning in the Spring 2014, defendants began a systematic, malicious, and deliberate course of unlawful conduct designed to attack Patriot's reputation and business as a means of intimidating Patriot and influencing the claims asserted in, and the outcome of, these bankruptcy proceedings. Defendants engaged in these attacks by fabricating accusations of tax and securities fraud by Patriot and Mr. Howe and publishing those fabrications for world-wide

1

consumption. Defendants' cyber-bullying campaign and other misconduct was intended to publicly humiliate, threaten, and harm Patriot and related persons as a means of:

(a) forcing Patriot to withdraw its Objection to Discharge Pursuant to 11 U.S.C. §§ 523 and 727;

(b) retaliating against Patriot for its role in commencing this involuntary proceeding against Mr. Fustolo; and/or

(c) influencing the prosecution and outcome of these bankruptcy proceedings.

In furtherance of their plan, defendants paid a Florida web designer to create a fictitious blog through which defendants published the untrue articles. Those articles were subsequently re-published by legitimate news organizations, thereby giving the stories an appearance of legitimacy. The articles were timed to correspond to events occurring in these bankruptcy proceedings and were intended to force the creditors to "settle" (or do a "deal") and, failing that, defendants would unleash the "nuclear option" – *viz*, building additional blogs through which other defamatory articles would be released. Indeed, *less than twenty-four hours after Patriot filed its complaint in this adversary proceeding, three new articles appeared on the Internet accusing Mr. Howe and another of his companies, Old Hill Partners Inc. (Old Hill), of engaging in a "Ponzi scheme" designed to "siphon" investors' money for Mr. Howe's personal benefit and likened Mr. Howe to a convicted felon, Bernie Madoff.* Mr. Howe and Old Hill emphatically deny these unsubstantiated allegations which, undoubtedly, are part of Mr. Fustolo's cyberbullying campaign. The new articles are attached hereto as **Exhibit 1**.

While Mr. Fustolo (through his counsel) denied any participation in these cyber-bullying attacks at a hearing before this Court last December, sworn testimony and evidence obtained by Patriot convincingly demonstrate that Mr. Fustolo directed the creation of the fictitious blog, authored the defamatory articles, and published them as a means of influencing the outcome of

2

these bankruptcy proceedings. In support of its motion, Patriot relies upon and incorporates by reference its Verified Complaint (Comp.) and states as follows:

## I.  BACKGROUND

1.  Patriot is one of three creditors of the Debtor Steven C. Fustolo that filed a Chapter 7 Involuntary Petition on May 6, 2013. (Dkt. 1). Patriot subsequently filed a Proof of Claim in the amount of $25,756,305.33, and later – along with other creditors – a Complaint seeking to prevent Mr. Fustolo from discharging his debt in bankruptcy. (Dkt. 218).

### The Cyber Attacks

2.  The attack on Patriot began on May 9, 2014, when a lawyer representing Mr. Fustolo (Attorney Bruce Edmands) wrote to counsel representing Patriot (Attorney Michael Fencer), advising that Mr. Fustolo had filed a "whistleblower" "claim" against Patriot with the Internal Revenue Service (IRS) and a corresponding "notice" of the claim with the Securities and Exchange Commission (SEC). According to the letter, Mr. Howe and Patriot – with advance knowledge of Mr. Fustolo's intent to notify the IRS of Patriot's "tax fraud" – preemptively commenced this involuntarily bankruptcy proceeding "as a means of retaliating against [Mr. Fustolo] for reporting Patriot's tax violations." In fact, neither Patriot nor Mr. Howe had any knowledge of the purported "whistleblower" claim until they received the May 9th letter. Comp. ¶17.

3.  The cyber-bullying started on or about August 21, 2014 with a press release titled "Old Hill Partners and John Howe under IRS and SEC Investigation" posted on a press release website with the url www.prnation.org, quickly followed on August 25, 2014 with an almost identical post titled "John C. Howe, Westport, Ct. Hedge Fund Executive Investigated for Tax Fraud and SEC Violations" on a blog hosted by Blogspot at the uniform resource locator (URL)

3

whistleblowersinternationalblog.blogspot.com (WBI Blog), under the screen name "Ashley Martin." In addition to Mr. Howe, the WBI Blog reported that Mr. Howe's private hedge funds – Patriot and Old Hill – and other off-shore funds were also being investigated for tax fraud and SEC violations.[1]  Comp. ¶18 and Ex. A.

    4.    The WBI Blog made several false statements as follows:

- Mr. Howe and his funds were "being investigated" by the IRS and SEC for "committing tax fraud and engaging in violations of the United States securities laws violations;"

- Mr. Howe and his funds "were tax cheats;"

- Mr. Howe and his funds had a "tax shortfall" of "at least $2 million;" and

- In an effort to persuade debtor not to report the alleged violations to the IRS and SEC, Mr. Howe – with two other creditors – tried to "intimidate and retaliate against debtor by forcing debtor into bankruptcy."

Comp. ¶19.

    5.    The WBI Blog concluded with a not-so-thinly-veiled threat against Mr. Howe and Patriot: "With the continued IRS pressure on private hedge funds, in general, and Mr. Howe's alleged tax fraud, investors have to be concerned about what the impact of both IRS and SEC investigations might have on the viability of Mr. Howe's private hedge funds."  Comp. ¶20.

    6.    According to the WBI Blog, the "genesis" of the investigation was a "Boston whistleblower" who turned in Mr. Howe and his hedge funds to the IRS and the SEC.  Upon information and belief, the so-called "Boston whistleblower" identified in the blog is Mr. Fustolo and the judicial proceedings described therein refer to this Chapter 7 case, which arose from Mr. Fustolo's default on a commercial loan and the subsequent entry of a $20 million judgment. (Dkt. Nos. 59, 60).  To this end, the WBI blog states, in part, as follows:

    According to court transcripts and other documents obtained by WBI, the

---

[1]     In fact, Patriot and Old Hill are investment advisors, not funds.

4

> [IRS/SEC investigation] started when Howe's Patriot Group obtained a $20 million judgment against a debtor who defaulted on a loan during the U.S.'s 2008 economic downfall. The debtor learned that Howe and his funds were tax cheats and informed Mr. Howe that he was going to report Howe and his funds to the IRS and SEC. According to court documents, Howe, in collaboration with two other creditors, tried to intimidate and retaliate against the debtor by forcing the debtor into bankruptcy.

Comp. ¶21.

7. The WBI Blog purported to be the home webpage of a legitimate international nonprofit organization, "Whistleblowers International" (WBI), displaying the slogan "protecting the courageous against the lawless." Patriot has been unable to identify or locate any actual organization named "Whistleblowers International," or an actual person named "Ashley Martin" connected with such an organization. Patriot has likewise attempted to identify, locate and contact other persons allegedly quoted or named as contacts in the alleged press releases posted at whistleblowersinternationalblog.blogspot.com, and have been unable to identify, locate or contact any of them. Comp. ¶22.

8. Approximately two weeks later, on or about September 11, 2014, there was a second post on the WBI Blog titled "Alleged Tax Cheat John C. Howe Bullies Whistleblower in Boston's U.S. Bankruptcy Court." Comp. ¶23 and Ex. A. In addition to continuing to tout the claim that Mr. Howe and Patriot were being investigated by the IRS and SEC for "tax fraud and United States securities laws violations," the second post – which purported to be part of WBI's "continuing" investigation of the "Boston whistleblower who is being attacked in the United States Bankruptcy Court" – made several false statements regarding Mr. Howe and Patriot including that they had "devised a clever and devious plan to retrieve the whistleblower information by abusing the U.S. Bankruptcy Code." In support of this assertion, the WBI Blog stated that Mr. Howe "failed to disclose his true intentions" when seeking permission to conduct

5

a "2004 examination," which debtor contends was an improper means of obtaining the information the debtor allegedly turned over to the IRS and SEC so that Mr. Howe could then use that information to "hide and conceal his alleged tax and securities frauds…." These allegations are false. Neither Mr. Howe nor Patriot have committed the crimes or abuses ascribed to them by the fake announcements. Comp. ¶¶23-24.

### Defendants' Cyber Attack Spreads on Paid Wire Release Services

9.     From August 21 – August 26, 2014, defendants went to the next stage of attack: releasing the same and similar false publications found on the WBI Blog, alleging to be from the "media contact" at WBI, through two paid news wire release services, "Press Release Nation" and "Release Wire." These wire release services, in turn, disseminated these phony news releases defaming Mr. Howe and Patriot to several websites and news services. Comp. ¶26.

10.     These releases, in addition to being wholly fraudulent as to their purported origin and sources, contained outrageously false and defamatory statements regarding Mr. Howe and Patriot, including, but not limited to:

- "Whistleblowers International (WBI), a nonprofit whistleblower advocate, announced today that filings made in Boston's U.S. Bankruptcy Court indicate that Old Hill Partners, Inc., Patriot Group, LLC, affiliated private hedge funds and other entities, and its chief executive officer, John C. Howe, of Westport, Connecticut, are under IRS and SEC investigation for U.S. tax fraud and securities laws violations. According to court records obtained by WBI, a Boston whistleblower has turned Old Hill Partners, its predecessor Patriot Group, its affiliated funds, and Mr. Howe, personally into both the IRS and SEC, with filings to other agencies pending."

- "Whistleblowers International (WBI) has announced that John C. Howe of Westport, Connecticut (USA), and his private hedge funds, Old Hill Partners and Patriot Group of Darien, Connecticut, are the subject of another SEC fraud investigation. The IRS is also investigating Mr. Howe and his funds for tax fraud."

- "According to WBI, a Boston whistleblower, who was also a borrower of the Patriot Group, reported Mr. Howe and his funds to the SEC and IRS,

> claiming they had committed tax fraud and violated U.S. securities laws. Subsequently, Mr. Howe forced the borrower into bankruptcy."

Comp. ¶27.

11. The foregoing allegations are false because sources referenced are completely fictitious, because Patriot has not committed any tax or securities fraud and is unaware of any investigations of allegations that it committed any such offenses, and because Patriot never commenced any bankruptcy proceedings *after* a whistleblower filing by any borrower—although it did experience attempted intimidation by threat of "whistleblower" complaints to the IRS and SEC in this bankruptcy action, which was commenced a full year *before* such threats. Patriot has received no notification of any investigation from either the IRS or SEC. Comp. ¶28.

12. The Press Release websites were successful in disseminating the cyber-attack across the Internet, and fraudulent publications can now be found at many URLs and sites. *See e.g.*, Comp. ¶ ¶29-30. Mr. Howe has also discovered that copies of the defamatory articles have been sent via U.S. Postal service to various of his neighbors and business associates. Comp. ¶31.

### Defendants' Video Attacks And Use of Complaint Boards

13. Beginning in or around late October 2014, defendants engaged in a new wave of attacks on Mr. Howe. More than two dozen videos appeared on the video sites dailymotion.com, youtube.com and vimeo.com commencing on or about October 27, 2014 containing Mr. Howe's photograph and false accusations identical or similar to those first published on the WBI Blog. Comp. ¶32  The following day, defendants began posting defamatory statements on consumer complaint boards including www.complaintsboard.com, www.complaintwire.org, www.complaints.com, www.pissedconsumer.com and www.ripoffreport.com, representative samples of which are set forth in the Verified Complaint, Paragraph 34.

7

**Defendants Target Mr. Howe's Wife, Daughter, Business Associates and Counsel**

14.     In a post headed "Old Hill and John Howe defrauded its Investors" and allegedly posted by "Paul Newmann" on or about October 30, 2014, defendants for the first time identified Mr. Howe's wife by name and posted their home address.  Such statements identifying Mr. Howe's wife and directing threatening and harassing comments at her have continued to appear throughout the period since October 30 and as recently as December 4, 2014.  Comp. ¶36.

15.     In a post titled "Members of John Howe's Old Hill Partners may be complicit in Mr. Howe's alleged crimes" and allegedly posted by "Gerard Lumpert" of "Luxembourg" at the URL   http://complaintwire.org/complaint/stTjdLlj_Qo/john-c-howe's-patriot-group-and-old-hill-partners, the defendant or his co-conspirator(s) began listing the names of employees (and former employees) and directors of Old Hill and/or affiliates and falsely accusing them of complicity in the "crimes" falsely alleged against Old Hill and Mr. Howe.  Comp. ¶37.  Other similar defamatory and harassing posts are described in the Verified Complaint at Paragraphs 38-39.

16.     Beginning November 11, 2014 the defendant or his co-conspirator(s) began posting more and more personal information about the identities, locations, connections, birthdates and personal plans of Mr. Howe's family, including the date and location for the wedding of his daughter and her fiancé, pictures of his daughter and her fiancé, and 9 videos of his daughter and her fiancé.  Comp. ¶40.

17.     On November 12, 2014, defendant or his co-conspirator(s) posted a "complaint' on the Internet stating that the wedding of Mr. Howe's daughter and her fiancé "might have a surprise visitor," putting Mr. Howe's family in fear of an intrusion into what should be a joyful family event by a malicious and perhaps violent interloper.  Comp. ¶42.

**Defendants Create WBI Blog To Influence Bankruptcy Proceedings**

18. In an effort to discover the source of the cyber-bullying, Mr. Howe and Old Hill filed an action in The Circuit Court for the Seventh Judicial District In And For Miami-Dade County Florida in an action entitled, *Old Hill Partners, Inc. and John Howe v. John Doe*, Case No. 16-2014-CA-008673 (Florida Action). Through an investigation and discovery in that action, they learned information that demonstrates that the WBI Blog was created at the direction of and financed by Mr. Fustolo as a vehicle through which Mr. Fustolo could engage in cyber-bullying through the publication of false and defamatory articles about Mr. Howe, Patriot, Old Hill, and other funds as a means of intimidating Patriot from pursuing its claims in these bankruptcy proceedings. Comp. 43.

19. In a sworn affidavit obtained in connection with the Florida Action, a Florida wed-designer – referred to in the Verified Complaint and herein as "Sloane" – stated that, in or about July of 2014, he was contacted to create a blog at the request of a certain person who did not disclose his name.[2] Sloane's client (Client) used a hushmail e-mail account and a phone number as his points of contact. The hushmail email address provided by the client as his point of contact was fust@hushmail.com. Coincidentally, Mr. Fustolo's e-mail address is "fust@aol.com." The phone number provide by the Client was 781-879-5606. The telephone number was to a pre-paid cellular phone. Comp. ¶45.

20. In a July 12, 20014 e-mail, the Client inquired whether Sloane could facilitate a "negative internet PR against individuals and businesses who may have attacked [client] either on or not on the internet? Example: distributing through the internet negative PR against an

---

[2] Sloane is fearful of retaliation from Mr. Fustolo for having revealed Mr. Fustolo's role in the cyber-bullying campaign and, accordingly, his true identity has not been disclosed in the Verified Complaint. Upon request, his identity and a copy of the affidavit he provided in the Florida Action will be provided to the Court for *in camera* review subject to the entry of a protective order limiting the review of the affidavit to the Court and counsel of record.

individual and/or company. I may have documents that are not on the internet that are negative to a 'bully' that I want to get on the internet in large volume." Comp. ¶46. The Client wanted to direct the content of his blog to sites that would not allow third-parties, especially the persons who were the subject of the blog, to respond or otherwise rebut the content of the blog. The Client was also concerned about keeping his identity a secret. In an August 9, 2014 e-mail to Sloane, the Client stated, "I am keeping my name out of everything as I am referred to as the 'borrower' or 'debtor' I will prepare the blog drafts and we can discuss it further prior to implementation." Comp. ¶47.

21. Using the information provided to him by his Client, Sloane created the WBI Blog. The Client was intimately involved in the creation of the blog and was particularly concerned that the blog look authentic. In an August 15, 2014 e-mail, the Client advised Sloane that the WBI Blog "need[ed]" a more professional logo than the whistle to have credibility." All content Sloane posted on the WBI Blog was provided directly to him from his Client. Comp. ¶¶49-50.

22. To register the WBI Blog, Sloane created an email address using the Google email service, gmail. This email address was whistleblowersint@gmail.com. The creation of this email address was at the direction of the Client. Sloane was the only person with access to this email. To give the WBI Blog the appearance of a legitimate organization, in an August 21, 2014 e-mail, the Client directed Sloane to create "some sort of address for WBI (Rue de …., Stockholm, Tel….)" In fact, the WBI was not an actual organization, but instead a fiction created by the Client to help facilitate the cyber-bullying described herein. Comp. ¶¶51-52.

23. For services provided creating the WBI Blog, Sloane sent his Client an initial invoice in the amount of $1,750, as reflected in an e-mail dated August 8, 2014. The Client

arranged for this amount to be paid by a "friend" who sent money on the Client's behalf to Sloane's PayPal account. Sloane received confirmation from PayPal on August 12, 2014 that $1,800 had been deposited into his account by "Jeffrey Zeizel." Mr. Fustolo's wife's is employed by a person named Jeffrey Zeizel who is believed to have done business with Mr. Fustolo. Comp. ¶53.

24. Sloane's Client drafted and sent to him for publication the blogs that appeared on the WBI Blog on August 25 and September 11, 2014. On August 21, 2014, Sloane's Client e-mailed him a draft of the blog that was eventually released on August 25, 2014. The document attached to the e-mail was titled "Article_1_wbi.pdf". Comp. ¶¶54 - 55 and Ex. B. Metadata in this document shows the name "Steven Fustolo" as "author" of the document. Patriot has located and identified several additional articles, documents, and press releases "authored" by "Steven Fustolo" and containing defamatory statements similar to those set forth in the WBI Blog. *Id*.

25. E-mail communication between Sloane and his Client for the period July through October 2014 confirm the use of the defamatory articles about Mr. Howe, Patriot and his other funds as a means of influencing the outcome of these bankruptcy proceedings. A sample of relevant communications and corresponding events in the underlying proceedings is set forth below.

| DATE | BANKRUPTCY PROCEEDINGS | E-MAIL |
|---|---|---|
| 2013 | | |
| May 6 | Chapter 7 Involuntary Petition filed | |
| 2014 | | |
| May 9 | | Letter from Fustolo's counsel (Attorney Edmands) to Patriot's |

|  |  | counsel (Attorney Fencer) advising that a "whistleblower" claim had been filed with the IRS and SEC. |
|---|---|---|
| July 12 |  | Client inquires whether Sloane could facilitate a "negative internet PR against individuals and businesses who may have attacked [client] either on or not on the internet? Example: distributing through the internet negative PR against an individual and/or company. I may have documents that are not on the internet that are negative to a 'bully' that I want to get on the internet in large volume." |
| Aug. 7-8 | The Court allowed Patriot's motions to (1) extend time to object to discharge and (2) conduct 2004 Examination of various persons including Elisa Fustolo, Mr. Fustolo's wife. (Dkt. Nos. 161-62) | In an e-mail dated August 8, the Client advised Sloane that "[e]vents changed today. I do want to go forward with what we spoke about. How would we go forward?" |
| Aug. 14-16 | On August 14, 2014, subpoenas were served upon Mr. Futolo's father's and wife's bank accounts. | In an e-mail dated August 16, 2014, the Client reports that "[t]hese guys took an extremely unethical and aggressive action against my family and elderly father" and asked whether Sloane would be ready "on Monday to launch" additional, defamatory press releases. |
| Aug. 25 |  | First blog published on WBI Blog: "John C. Howe, Westport, Ct. Hedge Fund Executive Investigated for Tax Fraud and SEC Violations" |
| Sep. 9 | In September, the parties began negotiations concerning a motion to quash subpoenas issued to Mr. Fustolo's wife and father. | Client e-mails Sloane: "Looks like your work is working. Got a call the other day about a 'deal.' Before we go to the next level, I want to see if we can work out a deal." |
| Sep. 11 |  | Second blog published on WBI Blog: "Alleged Tax Cheat John C. |

12

| | | |
|---|---|---|
| | | Howe Bullies Whistleblower in Boston's U.S. Bankruptcy Court." |
| Sep. 13 | | Client e-mails Sloane: "If we cannot settle with this person shortly, I will have to go to the next round and would ask for your services…." |
| Sep. 25 | | Client writes to inquire if Sloane can assist establishing "TWO new blog entities" to be used to be "populated" with a series of articles that "feed off the WBI articles… that keep the story alive. Client also advises of his interest to "do a snail mail campaign to his [Howe's] neighborhood, hedge funds, and others mailing copies of the articles that are on the web." <br><br> Further, client states: "Can you get this done and, if so, how much? I ask because we are at a critical point in the negotiation where we are an annoyance but not a real threat. Thus, he [Howe] will not settle and continues to harass my family." |
| Sep. 29 | | In response to inquiry from Sloane as to whether client wants to proceed with two new blogs, Client responds: "The decision day will be Oct. 1. There is an ensuing event that Howe has to take by 9-30 against me. If he takes the action, the gloves are off. If not, they stay on. Please sit tight for a few more days." |
| Sep. 30 | Patriot and another creditor file an Adversary Complaint against Debtor, Mr. Fustolo (Dkt. No. 218) | |
| Oct. 9 | | Sloane's Client writes: "They have not caved in and it looks like Round 2 is imminent. I have been traveling |

13

|  |  | and focused on the response to their recent court filings against my family members and others. Stay tuned as the 'nuclear option' may be necessary. I hope you have the stomach for getting in the mud and getting dirty as this group is slime and has no moral code." |
|---|---|---|

Comp. ¶56.

26. In an e-mail dated October 18, 2014, Sloane's Client acknowledges that the information he had published through the WBI Blogs was not accurate, stating that the stories were written with a "slant of opinion" and that "[s]ome of the quotes could be challenged…." In an effort to provide the appearance of credibility to the admittedly inaccurate articles, the Client concludes by stating that "[i]f WBI is not firmed up as being legitimate, the rest false [sic] apart." Comp. ¶57.

27. By late October, Sloane had grown concerned with the veracity of the information his client had provided for publication on WBI and declined the request to publish additional articles. In his last e-mail to Sloane on October 24, 2014, his client asked Sloane to "delete all email communications" between them. On November 6, 2014, one month before the commencement of the Florida Action, Sloane received an e-mail from "John Smith" stating: "This is a friend. I suggest you remove all previous communications from your prior jobs you worked on. please (sic) do not respond to this e-mail. good (sic) luck. Cheers." Comp. ¶58.

**Further Proof That Mr. Fustolo Is The Mastermind Behind The Cyber-Bullying Campaign**

28. By letter dated October 14, 2014, attorneys representing Old Hill and Mr. Howe sent a letter to Mr. Fustolo's counsel (Attorneys Nickless and Panos) advising that they were investigating the WBI Blog and would seek to hold the person(s) responsible for the defamatory and malicious publications responsible for their misconduct. Mr. Howe's and Old Hill's counsel

14

also began contacting internet service providers and media outlets in an effort to have the defamatory articles removed. Comp. ¶59. In an October 17, 2014 e-mail to Sloane, his Client advises that "[t]hey have contacted each of the media outlets that have the articles and have had them block them." In another e-mail sent later that day, the Client states, "[a]ccording to the lawyer's letter, they are making allegations that WBI is not real…." The Client's e-mail also describes, almost verbatim, the content of the October 14th letter sent to Mr. Fustolo's counsel (Attorneys Nickless and Panos). This letter was private, and not part of the public record in this case. Thus, it follows that the Client obtained a copy of the October 14, 2014 letter from Mr. Fustolo's Attorneys, Nickless or Panos, and that the "Client" is Mr. Fustolo. Comp. ¶¶60 and 61.

**Absence of Any Credible Evidence Of An SEC Or IRS Investigation**

29. Despite the allegations of the May 9, 2014 letter from Mr. Fustolo's lawyer (Bruce Edmands) alleging claims filed with the IRS and SEC, in proceedings before this Court on December 3, 2014, the Debtor's counsel (David Nickless) advised the Court that "[n]o claim has been filed. No complaint has been filed." Neither Patriot nor Mr. Howe have been: (a) notified by the IRS, SEC, or any other government agency that they, or any related persons, are under investigation for tax evasion, violating of the rules of regulations of the SEC, or violating any other statute, rule, or regulation; or (b) able to confirm that the IRS, SEC, or any other government agency is investigating them for tax evasion, violating of the rules of regulations of the SEC, or any other statute, rule, or regulation. Comp. ¶¶63-65.

30. At deposition, Mr. Fustolo was unable to: (a) identify the date he filed the complaint, other than to say that it was sometime between January 1 and May 9, 2014; (b) describe the nature of the violation alleged in the complaint that he allegedly drafted; or (c)

15

provide copies of any of the materials he allegedly transmitted to the IRS and SEC. His lawyer, Attorney Edmands – the author of the May 9th letter – was also unable to substantiate that a claim(s) had been filed with the IRS or SEC. Comp. ¶¶66 and 67.

### December 3, 2014 Hearing Before the Court (Feeney, J.)

31. At a hearing on various motions held before the Court (Feeney, J.) on December 3, 2014, Mr. Fustolo's counsel represented to the Court that he had asked his client about his participation in the incidents of cyber-bullying detailed herein, and that Mr. Fustolo had emphatically denied any involvement. When asked about Mr. Fustolo's involvement in the cyber-bullying, Attorney Nickless responded to the Court as follows:

- "I will represent to the Court that I have asked my client whether he did any of these postings, whether he provided any of that information, had the postings, and his answer has been no." (Tr. p. 16).

- "[M]y client has informed me that he directed no posts." (Tr. p. 17).

- "I object to it because there is no evidence before this Court, and as far as I know, Mr. Fencer, nor his office, nor the Trustee's office, nor anybody else has any evidence that my client has done – made any of these postings." (Tr. p. 19).

Based upon the foregoing, Mr. Fustolo's representations to this Court, through counsel, were false. Comp. ¶68-69.

### II. ARGUMENT

**A. THIS COURT HAS THE EQUITABLE POWER TO ISSUE INJUNCTIVE RELIEF.**

32. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). These equitable powers include the authority to issue injunctions. *See In re G.S.F. Corp.*, 938 F.2d 1467, 1479 (1st Cir. 1991) (holding that bankruptcy court has

authority pursuant to section 105(a) to issue injunctions); *In re Metro Transp. Co.*, 64 B.R. 968, 973 (Bankr. E.D. Pa. 1986) (enjoining proscribed conduct "solely on the basis of 11 U.S.C. § 105(a). . . . We believe that it is inescapable to avoid the conclusion that 28 U.S.C. § 959(b) requires a debtor to conform with applicable federal, state, and local law in conducting its business.").

33. Relying on section 105(a), bankruptcy courts have routinely issued injunctions to protect the integrity of the bankruptcy process. *See In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994) ("Section 105(a) should be construed liberally to enjoin actions that might impede the reorganization process.") (citation omitted); *Mgmt. Tech. Corp. v. Pardo (In re Mgmt. Tech. Corp.)*, 56 B.R. 337, 338 (Bankr. D.N.J. 1985) ("The bankruptcy courts have relied upon § 105[a] as a source of authority to resolve disputes which do not seem to be answered by other provisions of the Code. Indeed, § 105(a) has been properly utilized to issue injunctions and other writs necessary to protect the estate from interference, and to ensure its orderly administration."); *In re Earl*, 140 B.R. 728, 741 (Bankr. N.D. Ind. 1992) ("The Court must preserve the integrity of the Bankruptcy system and prevent the abusive use of the Bankruptcy system invoked only to thwart the legitimate rights of creditors,….").

**B. INJUNCTIVE RELIEF IS NECESSARY TO PREVENT DEFENDANTS FROM CONTINUING TO INTERFERE WITH PATRIOT'S EXERCISE OF ITS RIGHTS UNDER THE BANKRUPTCY CODE.**

34. Patriot's decision to commence and pursue an involuntary bankruptcy case against Mr. Fustolo is an explicit right granted to creditors under the Bankruptcy Code. *See* 11 U.S.C. § 303(b)(1); *see also In re VitaminSpice*, 472 B.R. 282, 290-91 (Bankr. E.D. Pa. 2012). Patriot is similarly within its rights to object to the discharge of Mr. Fustolo's debts, and exercise the panoply of rights afforded all litigants under the Bankruptcy Code, including conducting a

2004 examination . *See* 11 U.S.C. §§ 523(c) and 727(c); *see also In re Sibley*, 71 B.R. 147, 149 (Bankr. D. Mass. 1987) (allowing the creditor to maintain his objection to discharge "allows the creditor to exercise his substantive rights under 11 U.S.C. § 727(a)(1).").

35. It is simply indisputable that WBI and the WBI Blogs are fictions created by Mr. Fustolo and the other defendants as a means of harassing and intimidating Patriot into compromising and relinquishing its statutorily protected rights as a creditor in this bankruptcy proceeding. The e-mails to Sloane make plain Mr. Fustolo's intent to improve his position in this case and/or retaliate against Patriot for initiating this Chapter 7 case by trying to bully Patriot into submission by instituting a world-wide smear campaign.

36. Mr. Fustolo's ruffian-approach to litigation cannot be condoned by the Court. The creditor's rights and the integrity of the bankruptcy process can only be preserved and protected by the granting of the requested injunctive relief. To deny the injunction would serve only to subvert the bankruptcy process, and expose third-parties – including Mr. Howe's family – to unnecessary, unwarranted and continued torment.

37. Despite the overwhelming evidence, Mr. Fustolo will, as he has done before, undoubtedly deny his involvement in this heavy-handed scheme. Even if he is innocent of wrongdoing – which could hardly be the case based on the evidence submitted – there is no cognizable harm to Mr. Fustolo by granting the requested injunctive relief, *viz*, enjoining him from doing what he claims he is not: publishing defamatory articles about Patriot and related persons. On the other hand, if injunctive relief is not granted, Patriot will undoubtedly continue to be the target of an Internet smear campaign the goal of which is to impede its statutorily protected rights as a creditor in bankruptcy.

38. Unless enjoined by the Court, Mr. Fustolo will continue to lurk in the darkness of

the Internet, besmirching the good name, reputation, and character of Patriot, Mr. Howe, and related funds, in a quest to better his position in this Chapter 7 case. Indeed, within hours of the filing of the Verified Complaint in this adversary proceeding, new and unfounded articles have been released concerning Old Hill. This juvenile approach to litigation cannot be tolerated any longer.

### III. CONCLUSION

**WHEREFORE**, for all the reasons set forth herein, Patriot respectfully request that this Court enter an order in the form attached hereto as **Exhibit 2**. Pending the ruling on its request for injunctive relief, Patriot also requests that the Court schedule an evidentiary hearing directing Mr. Fustolo to appear and show cause as to why he should not be held in contempt of court. 18 *See* U.S.C. § 401(1) (court has the authority to punish misbehavior in the courtroom by imposing a "fine or imprisonment, or both, at its discretion."); *see also In re Grand Jury Investigation*, 545 F.3d 21, 25 (1st Cir. 2008) ("independent of any statute or rule," trial court has inherent power to sanction for contempt); *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 795 (1987) (the power to punish contempt is "inherent in all courts").

        Respectfully submitted,
        THE PATRIOT GROUP, LLC
        By its attorneys,

        */s/ Gary Greenberg*
        Gary Greenberg (BBO # 209420)
        John F. Farraher, Jr. (BBO #568194)
        Zachary Kleinsasser (BBO #664291)
        GREENBERG TRAURIG, LLP
        One International Place
        Boston, Massachusetts 02110
        Telephone:  617-310-6000

DATED:  January 14, 2015

## **CERTIFICATE OF SERVICE**

  I, Gary R. Greenberg, hereby certify that on January 14, 2015, I caused copies of the within Motion for Injunctive Relief to be served all parties of record via this court's CM/ECF system electronic mail and/or first class mail, postage prepaid upon those persons not subscribed to receive notices through the CM/ECF system.

    /s/ Gary R. Greenberg
    Gary R. Greenberg (BBO #209420)
    GREENBERG TAURIG, LLP
    One International Place
    Boston, Massachusetts 02110
    Telephone: 617-310-6000