# UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~

In re
**STEVEN C. FUSTOLO,**                                    Chapter 7
    Debtor                             Case No. 13-12692-JNF


~~~~~~~~~~~~~~~~~~~~~~~~

**THE PATRIOT GROUP, LLC,**
    Plaintiff
v.                                                        Adv. P. No. 15-1015
**STEVEN C. FUSTOLO and
JOHN DOES 1-10,**
    Defendants


~~~~~~~~~~~~~~~~~~~~~~~~


## MEMORANDUM


## I.      INTRODUCTION

The matter before the Court is the "Motion to Dismiss Amended Complaint" filed

by Steven C. Fustolo (the "Debtor").  The Patriot Group , LLC ("Patriot" or the "Plaintiff")

filed an Opposition to the Motion to Dismiss, together with the Declaration of Zachary C.

Kleinsasser, Esq., an attorney at the firm of Greenberg Traurig, LLP, counsel of record to

the Plaintiff.  Attorney Kleinsasser attached a transcript of an evidentiary hearing held on

February 20, 2015 with respect to the Plaintiff's Motion for Civil Contempt during which

the Debtor repeatedly invoked his Fifth Amendment right against self-incrimination.

1

## II.     BACKGROUND

The Plaintiff filed a Verified Complaint for Injunctive Relief against the Debtor on

January 13, 2015.  In its Complaint, it alleged, *inter alia*, the following:

> Beginning in the Spring of 2014 – nearly a year after the Chapter 7
> Involuntary Petition in this case was filed – defendants began a systematic,
> malicious, and deliberate course of unlawful conduct designed to attack
> plaintiff's reputation and business as a means of intimidating plaintiff and
> related persons and influence the claims asserted in, and the outcome of,
> these bankruptcy proceedings. Defendants engaged in these attacks on
> plaintiff by fabricating accusations of tax and securities fraud by plaintiff and
> plaintiff's founder and chief executive officer and posting those fabrications
> on the Internet for world-wide consumption and also disseminating them
> through the U.S. mail. Defendants' cyber-bullying campaign and other
> misconduct was intended to publicly humiliate, harass, threaten, and harm
> the plaintiff and related persons.

> Upon information and belief, Defendant Steven C. Fustolo, and others acting
> in concert with him, engaged in a clandestine and nefarious scheme designed
> to force Plaintiff The Patriot Group, LLC to withdraw its Objection to
> Discharge Pursuant to 11 U.S.C. §§ 523 and 727, to influence the prosecution
> and outcome of these bankruptcy proceedings, and to retaliate against
> plaintiff for its role in commencing this involuntary proceeding. To this end,
> Mr. Fustolo, or others acting at his direction, paid a Florida web designer to
> create a blog through which Mr. Fustolo published false, malicious,
> defamatory and untrue articles about plaintiff and its principal, John C.
> Howe. Metadata obtained from documents provided by the Florida web
> designer revealed that "Steve Fustolo" "authored" the defamatory materials.
> This, taken in conjunction with the substantial additional evidence described
> herein, leads to the unavoidable conclusion that Mr. Fustolo is the
> mastermind behind this cyber-bullying campaign.

Verified Complaint at ¶¶ 1-2. On January 14, 2015, the Plaintiff filed a Motion for Injunctive

Relief, referencing the allegations in its Complaint, as well as sections 105(a), 303(b), 523(c)

and 727(c) of the Bankruptcy Code.  In its Motion for Injunctive Relief, the Plaintiff sought

an order enjoining the Debtor and those acting in concert with him "from, among other

things, continuing to publish via the Internet, US mail, or otherwise, defamatory statements about Patriot, its Chief Executive Officer, John C. Howe, and related persons" and an order "directing defendants to immediately remove the untrue articles from publication and cease and desist from any further publications."   In support of its motion, the Plaintiff further represented that the cyber-bullying campaign engineered by the Debtor was intended to force Patriot to withdraw its objection to the Debtor's discharge (Adv. P. No. 14-1193), to retaliate against the Plaintiff for its role in commencing the involuntary petition, and to influence the prosecution and outcome of the bankruptcy proceeding.   As it noted in the introductory paragraphs to its Complaint, Patriot, in its Motion for Injunctive Relief, asserted that the Plaintiff paid a Florida web designer to create a fictitious blog through which untrue articles were published.[1]   The Plaintiff stated that attacks on it

---

[1] Patriot further represented:

Those articles were subsequently re-published by legitimate news organizations, thereby giving the stories an appearance of legitimacy. The articles were timed to correspond to events occurring in these bankruptcy proceedings and were intended to force the creditors to "settle" (or do a "deal") and, failing that, defendants would unleash the "nuclear option" – viz, building additional blogs through which other defamatory articles would be released. Indeed, *less than twenty-four hours after Patriot filed its complaint in this adversary proceeding, three new articles appeared on the Internet accusing Mr. Howe and another of his companies, Old Hill Partners Inc. (Old Hill), of engaging in a "Ponzi scheme" designed to "siphon" investors' money for Mr. Howe's personal benefit and likened Mr. Howe to a convicted felon, Bernie Madoff.* Mr. Howe and Old Hill emphatically deny these unsubstantiated allegations which, undoubtedly, are part of Mr. Fustolo's cyberbullying campaign.

Motion for Injunctive Relief at p.2 (emphasis in original).

began on May 9, 2014 when a lawyer representing the Debtor (Attorney Bruce Edmands) wrote to the Plaintiff's counsel, Michael Fencer, Esq., advising him that the Debtor had filed a "whistle blower claim" against Patriot with the Internal Revenue Service (IRS) and a corresponding "notice" of the claim with the Securities and Exchange Commission (SEC). The Plaintiff further set forth in its motion that "[a]ccording to the letter, Mr. Howe [Patriot's Chief Executive Officer, John C. Howe] and Patriot – with advance knowledge of Mr. Fustolo's intent to notify the IRS of Patriot's 'tax fraud' – preemptively commenced this involuntarily bankruptcy proceeding 'as a means of retaliating against [Mr.Fustolo] for reporting Patriot's tax violations.'"  It further stated that cyber attacks began on or about August 21, 2014 with a press release titled "Old Hill Partners and John Howe under IRS and SEC Investigation" which was posted on a press release website with the URL [uniform resource locator] www.prnation.org.  That post was quickly followed on August 25, 2014 with an almost identical post titled "John C. Howe, Westport, Ct. Hedge Fund Executive Investigated for Tax Fraud and SEC Violations" on a blog hosted by Blogspot at whistleblowersinternationalblog.blogspot.com (WBI Blog), under the screen name "Ashley Martin."[2]  Patriot set forth additional information about subsequent attacks, including the release of the same and similar false publications alleged to be from a "media contact" at WBI through two paid wire release services. According to Patriot, the defendants also caused more than two dozen videos to appear on video sites, dailymotion.com,

---

[2] Patriot asserted that it could not identify or locate any actual organization named "Whistleblowers International," or an actual person named "Ashley Martin" connected with such an organization.

4

youtube.com, and vimeo.com, commencing on or about October 27, 2014. The videos contained Mr. Howe's photograph and false accusations identical or similar to those first published on the WBI Blog, as well as the posting of defamatory statements on consumer complaint boards. Further attacks involved Mr. Howe's wife, daughter, business associates and counsel. According to Patriot,

> In an effort to discover the source of the cyber-bullying, Mr. Howe and Old Hill filed an action in The Circuit Court for the Seventh Judicial District In And For Miami-Dade County Florida in an action entitled, Old Hill Partners, Inc. and John Howe v. John Doe, Case No. 16-2014-CA-008673 (Florida Action). Through an investigation and discovery in that action, they learned information that demonstrates that the WBI Blog was created at the direction of and financed by Mr. Fustolo as a vehicle through which Mr. Fustolo could engage in cyberbullying through the publication of false and defamatory articles about Mr. Howe, Patriot, Old Hill, and other funds as a means of intimidating Patriot from pursuing its claims in these bankruptcy proceedings.

Motion for Injunctive Relief at p.9, ¶ 18. As a result of its discovery, it set forth additional evidence that the Debtor was the mastermind of the cyber-bullying campaign.

The Debtor opposed the issuance of an injunction, and the Court conducted a hearing on January 22, 2015. At the hearing, counsel to the Plaintiff referenced a number of criminal statutes that the defendants may have violated, including 28 U.S.C. §§ 1512 and 2261(a),[3] and Mass. Gen. Laws ch. 265, § 43A,[4] as well as the decision of the

---

[3] Section 1512 is entitled "Tampering with a witness, victim or informant." It criminalizes among other things the following:

> (b) Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to--

_____

(1) influence, delay, or prevent the testimony of any person in an official proceeding;

(2) cause or induce any person to--

> (A) withhold testimony, or withhold a record, document, or other object, from an official proceeding;
> (B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding;
> (C) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or
> (D) be absent from an official proceeding to which such person has been summoned by legal process; or

(3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release [,] parole,, [sic] or release pending judicial proceedings;

shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512(b).  Section 2261 is entitled "Interstate domestic violence." The latter statute criminalizes the following:

(a) Offenses. --

> (1) Travel or conduct of offender.--A person who travels in interstate or foreign commerce or enters or leaves Indian country or is present within the special maritime and territorial jurisdiction of the United States with the intent to kill, injure, harass, or intimidate a spouse, intimate partner, or dating partner, and who, in the course of or as a result of

such travel or presence, commits or attempts to commit a crime of violence against that spouse, intimate partner, or dating partner, shall be punished as provided in subsection (b).

(2) Causing travel of victim.--A person who causes a spouse, intimate partner, or dating partner to travel in interstate or foreign commerce or to enter or leave Indian country by force, coercion, duress, or fraud, and who, in the course of, as a result of, or to facilitate such conduct or travel, commits or attempts to commit a crime of violence against that spouse, intimate partner, or dating partner, shall be punished as provided in subsection (b).

18 U.S.C. § 2261.

[4] Section 43A is captioned "Criminal harassment; punishment." It provides:

(a) Whoever willfully and maliciously engages in a knowing pattern of conduct or series of acts over a period of time directed at a specific person, which seriously alarms that person and would cause a reasonable person to suffer substantial emotional distress, shall be guilty of the crime of criminal harassment and shall be punished by imprisonment in a house of correction for not more than 2½ years or by a fine of not more than $1,000, or by both such fine and imprisonment. The conduct or acts described in this paragraph shall include, but not be limited to, conduct or acts conducted by mail or by use of a telephonic or telecommunication device or electronic communication device including, but not limited to, any device that transfers signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photo-electronic or photo-optical system, including, but not limited to, electronic mail, internet communications, instant messages or facsimile communications.

(b) Whoever, after having been convicted of the crime of criminal harassment, commits a second or subsequent such crime, or whoever commits the crime of criminal harassment having previously been convicted of a violation of section 43, shall be punished by imprisonment in a house of correction for not more than two and one-half years or by imprisonment in the state prison for not more than ten years.

7

United States Court of Appeals for the First Circuit in In re Sheridan, 362 F.3d 96, 107 (1st Cir. 2004) ("[T]o the extent that attorney misconduct may have thwarted the efforts of the bankruptcy court to bring a particular bankruptcy proceeding efficiently to conclusion, it is at least arguable that attorney disciplinary proceedings occurring during such a case can be classified as core.").

Following the hearing, the parties submitted briefs.  In its brief, the Plaintiff argued that the Debtor's misconduct violated Mass. Gen. Laws ch. 258E, § 1, as well as the federal and state criminal statutes referenced above.

On January 30, 2015, the Court, finding that the Debtor had failed to rebut the evidence presented by Patriot in support of its Motion for Injunctive Relief, entered the following preliminary injunction:

> The Court orders that the Defendant, Steven C. Fustolo (the "Defendant") and his agents, employees, representatives, and any person acting on his behalf (the "Restrained Parties") to immediately cease and desist from publishing or causing to be published any and all defamatory, disparaging, vexatious, libelous, harassing, unlawful, or false statements, articles, press releases, blogs, stories, or publications of any sort on the Internet, through US mail, or through any other medium concerning Patriot and its employees, officers, directors, and agents, including, without limitation, John C. Howe (the "Protected Parties"), as set forth in the Verified Complaint.
>
> The Defendant shall forthwith take all actions reasonably necessary to remove or to cause the Restrained Parties to remove all defamatory, disparaging, vexatious, libelous, harassing, unlawful, or false statements about the Protected Parties from the Internet or other mediums or platforms which were posted, published, mailed, drafted, or reproduced in any manner

---

Mass. Gen. Laws ch. 265, § 43A.

by the Restrained Parties.[5]

---

[5] The Court also issued a Memorandum in support of the entry of a preliminary injunction, stating:

First, the Plaintiff has shown a likelihood of success on merits of a claim for harassment under Mass. Gen. Laws ch. 258E, § 3(a)(i). The allegations of the Verified Complaint, if proven, and evidence supporting those allegations set forth therein, present a viable claim for harassment under Mass. Gen. Laws ch. 258E, § 3(a)(i) and for injunctive relief. Notably, the timing of certain of Debtor's actions alleged in the Verified Complaint appear to be coordinated with crucial dates arising in the Debtor's bankruptcy case, namely the deadline to file complaints seeking denial of or exceptions to the Debtor's discharge. This Court must enjoin litigation misconduct to implement the provisions and policies of the Bankruptcy Code and to protect the integrity of the system under 11 U.S.C. § 105(a).

With regard to the second and third prongs, harm to the Plaintiff and the balancing of harms to both parties, the Defendant has not submitted any evidence in the form of an affidavit to rebut the allegations set forth in Plaintiff's Verified Complaint. The allegations and evidence are unrebutted at this stage of the adversary proceeding. The Plaintiff has demonstrated that the egregious public statements made by the Defendant in the website and blogs are false and have caused the Plaintiff, its principal and his family distress and harm. The statements are outrageous and inflammatory. The balance of harms favor the requested injunctive relief as the Plaintiff continues to sustain harm by the virtue of the postings and attacks in violation of Mass. Gen. Laws ch. 258E, § 3(a)(i). The harm to the Plaintiff greatly outweighs the Defendant's hardship of having to withdraw and remove the statements from the websites, as the Plaintiff's reputation and business may be harmed by the postings. The Plaintiff has alleged that its principal has suffered emotional distress from the false statements posted about him.

Finally, the injunction does not violate the public interest. Indeed, an injunction against continuous false statements intended to bully a person into relinquishing legal remedies in a bankruptcy case, including the right to commence discharge litigation against a debtor, is harassment under Mass. Gen. Laws ch. 258E, § 3(a)(i). An injunction against harassment is in furtherance of the statute's policy of preventing civil harassment and is in furtherance of the integrity of the bankruptcy process.

In its Memorandum accompanying the order granting the Plaintiff a preliminary injunction the Court observed:

> The provisions of 28 U.S.C. § 157(b)(5) which provide that personal injury tort claims must be tried in the district court and not the bankruptcy court do not apply at this stage of the proceeding. This is not a personal injury claim as Patriot made clear in its post-hearing brief that it is not seeking damages for or to enjoin defamation, but rather is seeking to restrain harassment that violates Massachusetts law. To the extent the Plaintiff does not make clear in its original complaint that it is seeking to restrain harassment in violation of Massachusetts law, the Court directs that the Plaintiff amend its Complaint.

The Patriot Group, LLC v. Fustolo (In re Fustolo), No. 15-1015, 2015 WL 411760 at *2, n.3 (Bankr. D. Mass. Jan. 30, 2015). On February 10, 2015, the Plaintiff filed an Amended Complaint adding a count under Mass. Gen. Laws ch. 258E, a statute which it had addressed in its brief. The Amended Complaint is identical to the original Complaint with respect to all factual allegations and Count I (Injunctive Relief under Section 105). The Plaintiff in its Amended Complaint, however, added Count II (Restraint of Harassment under Mass. Gen. Laws ch. 258E, § 3(a)), and Count III (Declaratory Judgment). In support of Count II, the Plaintiff alleged:

> . . . Mass. Gen. Laws ch. 258E, § 3(a) authorizes a plaintiff "suffering from harassment" to request "protection from such harassment" by petitioning the Court for an order that the defendant be enjoined from continuing to harass the plaintiff, restrained from contacting the plaintiff, and ordered to remain away from the plaintiff, among other things.

> . . . Mass. Gen. Laws ch. 258E, § 1 defines harassment as "3 or more acts of willful and malicious conduct aimed at a specific person committed with the intent to cause fear, intimidation, abuse or damage to property and that does in fact cause fear, intimidation, abuse or damage to property . . . ."

> . . . Defendants have engaged in at least three acts of willful and malicious

10

conduct aimed at plaintiff, plaintiff's employees and investors, Mr. Howe, members of Mr. Howe's family, and agents of plaintiff with the intent to cause fear, intimidation, abuse, and/or damage to property including, without limitation, embarking upon a systematic course of conduct designed to attack Patriot's reputation and business as a means of intimidating Patriot and influencing the claims asserted in, and the outcome of, these bankruptcy proceedings; making egregious, outrageous, and inflammatory public statements that are false; fabricating accusations of tax and securities fraud by Patriot and Mr. Howe and publishing those fabrications for world-wide consumption; paying a Florida web designer to create a fictitious blog through which defendants published untrue articles; and timing the publication of false statements to correspond with events occurring in these bankruptcy proceedings, namely, the deadline to file complaints seeking denial of or exceptions to defendants' discharge.

. . .  Defendants' willful and malicious conduct is characterized by cruelty, hostility, and/or revenge.

. . . Defendants [sic] willful and malicious conduct has, in fact, caused fear, intimidation, abuse, and damage to plaintiff's property and, unless enjoined and restrained, will continue to cause fear, intimidation, abuse, and damage to plaintiff's property, by, among other things, interfering with the efficient administration of defendants' Chapter 7 estate; interfering with plaintiff's rights as a creditor, including plaintiff's rights under Bankruptcy Code 303(b), 523(c), and 727(c); causing plaintiff, plaintiff's employees and investors, Mr. Howe, members of Mr. Howe's family, and agents of plaintiff fear, torment, emotional distress, and other harm; subverting and impeding the integrity of the bankruptcy process; undermining the authority of this Court; and depleting the assets of defendants' estate.

. . . Accordingly, plaintiff is entitled to an order enjoining and restraining defendants from continuing to harass plaintiff by (a) causing defamatory, disparaging, libelous, harassing, unlawful, and/or false statements about plaintiff and related persons to be posted or published on the Internet or on or through any other medium, and by (b) impeding the efficient administration of this Chapter 7 case.

Amended Complaint at pp.30-31, ¶¶ 82-87.

Finally, pursuant to Count III, the Plaintiff sought the following:

[A] declaratory judgment in favor of plaintiff and against defendants pursuant to 28 U.S.C. § 2201 and Bankruptcy Rule 7001(9), declaring and adjudging that:

> A. defendants' conduct violates plaintiff's rights under Bankruptcy Code sections 303(b), 523(c), and 727(c);
>
> B. defendants have no right to cause defamatory, disparaging, libelous, harassing, unlawful, and/or false statements about plaintiff and related persons to be posted or published on the Internet or on or through any other medium;
>
> C. defendants have no right to harass, intimidate, or abuse plaintiff, plaintiff's employees and investors, Mr. Howe, members of Mr. Howe's family, and/or agents of plaintiff;
>
> D. defendants have no right to interfere with the efficient administration of defendants' Chapter 7 estate; and
>
> E. defendants have no right to interfere with plaintiff's rights as a creditor, including plaintiff's rights under Bankruptcy Code sections 303(b), 523(c), and 727(c).

Amended Complaint at pp. 50-51.

## III.   THE MOTION TO DISMISS THE AMENDED COMPLAINT and PATRIOT'S OPPOSITION

### A. <u>The Motion to Dismiss</u>

The Debtor, in its Memorandum in support of dismissal makes the following

argument in support of dismissal:

> The Amended Complaint should be dismissed for two independent reasons. First, the Court lacks subject-matter jurisdiction over this adversary proceeding, which is neither core nor non-core. Because the claims in the Amended Complaint do not affect the bankruptcy estate, the Court does not have in rem jurisdiction. The Court also lacks jurisdiction over the Amended Complaint's claims arising from alleged post-petition torts.

12

Second, the three counts alleged in the Amended Complaint—injunctive relief (Count I), Mass. Gen. Laws ch. 258E (Count II), and declaratory judgment (Count III)—do not state claims upon which relief may be granted. In particular, injunctive relief is a remedy, not a cause of action; and Mass. Gen. Laws ch. 258E ("Chapter 258E") is a statute of limited jurisdiction. In addition, the Declaratory Judgment Act and Bankruptcy Rule 7001(9) themselves do not confer subject-matter jurisdiction and Patriot has not stated cognizable claims under these statutes.

Memorandum at pp.1-2. Specifically, with respect to this Court's jurisdiction, the Debtor rejects the existence of jurisdiction in the bankruptcy court based upon his post-petition actions which purportedly interfered with Patriot's participation in and the administration of the Chapter 7 Case. The Debtor maintains that the actions, "even if true, are insufficient to confer jurisdiction where neither the case nor the estate has been shown to be actually impacted in any way by the Debtor's alleged postpetition wrongdoing," adding that "[t]he outcome of this adversary proceeding would have no effect on the estate" because "[t]here are only conclusory and boilerplate allegations in the Amended Complaint that the alleged misconduct has had any impact on the estate or proceedings in the Chapter 7 Case."[6] He

---

[6] The Debtor observes:

Patriot's aggressive litigation tactics have continued, unabated, despite the alleged internet postings. According to the Amended Complaint, the first alleged postings occurred on August 21, 2014. (Am. Compl. ¶ 18.) From August of 2014 until Patriot commenced this adversary proceeding, Patriot filed more than a half dozen pleadings in the Chapter 7 Case, including its non-dischargeability complaint and proceeded with depositions of the Debtor and his former counsel. (Chapter 7 Case, No. 13-12692, Doc. Nos. 218 (Adv. Pro. Compl. for Non-Dischargeability), [#]198 (Mot. for Examination of Bruce Edmands).) Patriot has continued this aggressive posture by subpoenaing the Debtor's wife, the Debtor's father, and the attorneys representing Patriot in the Chapter 7 Case and this adversary proceeding. There has not been any impact on the Chapter

asserts that the undisputed record in his Chapter 7 case compels the conclusion that "[p]ut simply, this adversary proceeding is irrelevant to the Chapter 7 Case and should be adjudicated in state court."  The Debtor also argues that Patriot's claims in this adversary proceeding, which he asserts really should be state law claims for defamation, do not impact the bankruptcy estate.

With respect to Count I, the Debtor maintains that it should be dismissed because it does not state a cognizable claim.  He states that it is well-established that an injunction is not a cause of action but a remedy, citing Koufos v. U.S. Bank, N.A., 939 F.Supp.2d 40, 46 (D. Mass. 2013).

With respect to Count II, the Debtor argues that, by its express terms, the Court cannot exercise subject-matter jurisdiction over claims arising under this statute because pursuant to § 2 of Mass. Gen. Laws ch. 258E, "[p]roceedings under this chapter shall be filed, heard and determined in the superior court department or the respective divisions of the district court department or the Boston municipal court department having venue over the plaintiff's residence."  He concludes that because "Chapter 258E does not confer the bankruptcy court with jurisdiction, and . . .  the bankruptcy court is one of limited jurisdiction . . . the Amended Complaint fails to assert a jurisdictional basis for this Court

---

7 trustee's exercise of his rights and duties (notably, the trustee has not complained to the Court of any impact or interference). Given the evidence that there is no direct or actual impact on the estate, this Court is not the appropriate forum to litigate Patriot's allegations of defamatory statements that are not a matter concerning administration of the estate.

Memorandum at pp.6-7.

to hear a claim under Chapter 258E."

Lastly, the Debtor argues that Count III should be dismissed because the Declaratory

Judgment Act, 28 U.S.C. § 2201, does not confer jurisdiction where none would otherwise

exist.  He adds:

> Patriot has failed to plead facts sufficient to show that any alleged harassing
> activity by the Debtor, even if accepted as true, had any plausible effect on
> Patriot's rights under Bankruptcy Code sections 303(b), 523(c), and 727(c).
> The Amended Complaint does not allege a single instance in which Patriot
> was actually intimidated or hindered in participating in the Chapter 7 Case
> or from otherwise seeking relief under the Bankruptcy Code (other than in
> the rote, cursory statements in paragraphs 2, 77, and 905). The conclusory
> allegations in the Amended Complaint are especially lacking plausibility in
> light of Patriot's ongoing and active participation in the Chapter 7 Case.

Memorandum at pp.13-14.

B. Patriot's Opposition

Patriot's principal argument in its Opposition is that denial of the Motion to Dismiss

is required because this Court has already rejected the Debtor's arguments as to subject

matter jurisdiction and has already exercised jurisdiction over Patriot's claims when it

entered a preliminary injunction, ruling that Patriot has shown a likelihood of success on

the merits of its claims. It maintains that having found the existence of subject matter

jurisdiction and a likelihood of success on its claims in connection with its Motion for

Injunctive Relief, its allegations in its Amended Complaint regarding both subject matter

jurisdiction and its substantive claims clearly satisfy the far less stringent standard

governing dismissal under Fed. R. Civ. P. 12(b)(6), made applicable to this proceeding by

Fed. R. Bankr. P. 7012.  It highlights this Court's conclusion that it had subject matter

jurisdiction to restrain litigation misconduct which concerned the administration of the bankruptcy estate.

Patriot also asserts that the Debtor's harassment has interfered with "matters concerning the administration of the estate," explaining that, although the Debtor may not have succeeded in intimidating Patriot to give up its claims, he has been successful in "stalling the bankruptcy proceedings, distracting the Court and the parties from the underlying bankruptcy case, and delaying the final distribution of assets – results that are directly contrary to fundamental policies underlying the bankruptcy process." Patriot also argues that it "has all but confirmed that Mr. Fustolo used the assets of the estate to pay one or more web-designers who aided him in his cyber-bullying campaign."

With respect to Count II, Patriot, citing Landworks Creations, LLC v. U.S. Fid. & Guar. Co., No. 05-40072-FDS, 2005 WL 3728719 at *3 (D. Mass. Nov. 15, 2005),[7] argues that

_____

[7] The decision in Landworks Creations, LLC, involved an action by a subcontractor against a surety on a performance bond, arising out of a default by a contractor on a public-works project. The issue presented was whether the matter should be remanded to state court for lack of federal jurisdiction. The statute in question in that case provided:

> In order to obtain the benefit of [a bond furnished as security for certain public works projects] for any amount claimed due and unpaid at any time, any claimant having a contractual relationship with the contractor principal furnishing the bond ... shall have the right to enforce any such claim . . . by prosecuting the claim thereafter by trial in the superior court."[sic]

2005 WL 3728719 at *3. The Landworks court noted that statutory language it considered was permissive, not mandatory. In contrast, Mass. Gen. Laws ch. 258E, § 2 provides in pertinent part: "Proceedings under this chapter *shall be filed*, heard and determined in the superior court department or the respective divisions of the district

it is black-letter law that a "grant of exclusive jurisdiction by a state legislature cannot divest this [federal] Court of subject matter jurisdiction." It adds that a "state legislature cannot define the scope of federal jurisdiction."

Finally, it also argues that the Amended Complaint states a claim for Declaratory Judgment. It maintains that in a case of "actual controversy" a court can enter a declaratory judgment.

## IV. DISCUSSION

A. Dismissal Standard

In Schatz v. Republican State Leadership Comm., 669 F.3d 50 (1st Cir. 2012), the United States Court of Appeals for the First Circuit set forth the proper paradigm for consideration of motions to dismiss. Citing Ocasio–Hernández v. Fortuño–Burset, 640 F.3d 1, 7, 11–13 (1st Cir. 2011), it stated:

> Ocasio–Hernández points the way to the proper handling of a motion to dismiss. Step one: isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements. Id. at 12 (discussing, among other cases, Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Step two: take the complaint's well-pled ( i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief. Id. (again, discussing Iqbal and Twombly, among others); see also S.E.C. v. Tambone, 597 F.3d 436, 441–42 (1st Cir. 2010) (en banc). Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a "context-specific" job that compels us "to draw on" our "judicial experience and common sense." Iqbal,

court department or the Boston municipal court department having venue over the plaintiff's residence." (emphasis supplied).

129 S.Ct. at 1949, 1950. And in performing our review, we realize too that we can consider (a) "implications from documents" attached to or fairly "incorporated into the complaint," (b) "facts" susceptible to "judicial notice," and (c) "concessions" in plaintiff's "response to the motion to dismiss." Arturet–Vélez v. R.J. Reynolds Tobacco Co., 429 F.3d 10, 13 n. 2 (1st Cir. 2005); *see also* Haley v. City of Boston, 657 F.3d 39, 44, 46 (1st Cir. 2011).

Schatz, 669 F.3d at 55-56 (footnote omitted).

B. Abstention

"[A] district court in the interest of justice, or in the interest of comity with State courts or respect for State law [may abstain] from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). In In re Maroun, 427 B.R. 200 (Bankr. D. N.H. 2010), the bankruptcy court observed:

"Although section 1334(c)(1) grants discretionary power to the 'district court,' " such power is similarly conferred on bankruptcy courts. Ford v. Clement (In re Beckmeyer), 1999 WL 33457767, *2 (Bankr. D. N.H. 1999). As previously noted, *supra*, the Court treats the current proceeding as "core." Nonetheless, "[d]iscretionary abstention applies to both core and non-core proceedings." Id. The issue of discretionary abstention may be raised by a court *sua sponte*. Id. at *4.

Maroun, 427 B.R. at 207.  In Baker v. Simpson, 413 B.R. 38 (E.D.N.Y. 2009), *aff'd*,  613 F.3d 346 (2d Cir. 2010), *cert. denied, __ U.S. __*, 131 S.Ct. 928 (2011), the court identified a number of factors pertinent to a decision to abstain:

1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law

18

claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden [on] the court's docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

Id. at 45 (citations omitted). Courts are instructed to "apply these factors flexibly, for their relevance and importance will vary with the particular circumstances of each case, and no one factor is necessarily determinative. At the same time, because section 1334(c)(1) is concerned with comity and respect for state law, whether a case involves unsettled issues of state law is always significant." Matter of Chicago, Milwaukee, St. Paul & Pac. R.R. Co., 6 F.3d 1184, 1189 (7th Cir. 1993).

    C. The Amended Complaint

        1. Count II

            a. Background

The Court shall address Count II of the Amended Complaint first. The Court intends to reconsider its rulings that "the Plaintiff has shown a likelihood of success on merits of a claim for harassment under Mass. Gen. Laws ch. 258E, § 3(a)(i)" and that "[t]he allegations of the Verified Complaint, if proven, and evidence supporting those allegations set forth therein, present a viable claim for harassment under Mass. Gen. Laws ch. 258E, § 3(a)(i) and for injunctive relief." See In re Fustolo, 2015 WL 411760 at * 3. The original Complaint did not contain a specific count under Mass. Gen. Laws ch. 258E, § 3(a)(i); indeed, the Plaintiff only asserted an entitlement to relief under ch. 258E in its brief

following the hearing on the Motion for Injunctive Relief and did not set forth the entire

statutory scheme. The statute's restrictive jurisdictional provision was not brought to this

Court's attention until the filing of the Debtor's Motion to Dismiss. More importantly, the

Court is compelled to observe from its examination of both the original Complaint and the

Amended Complaint that the egregiousness of the Debtor's conduct, which he did not

adequately rebut, appears to have circumscribed thoughtful consideration of the

appropriate relief obtainable by the Plaintiff and the best forum in which to obtain it.

Following the hearing on the Motion for Injunctive Relief, the Court also was concerned

about the Debtor's attempted manipulation of the bankruptcy court, but now must

reconsider its ruling as to the Plaintiff's likelihood of success with respect to the Complaint

and Amended Complaint as to the relief sought pursuant to Mass. Gen. Laws ch. 258E in

conjunction with the Debtor's Motion to Dismiss.

In <u>Meyer v. Lenox (In re Lenox)</u>, 902 F.2d 737 (9th Cir. 1990), the court observed:

> Although FRCP 60(b) provides that a court may relieve a party from a final
> order upon motion, it does not prohibit a bankruptcy judge from reviewing,
> sua sponte, a previous order. *See* 11 U.S.C. § 105(a); *see also* <u>In re Chinichian</u>,
> 784 F.2d at 1442-43. And although FRCP 60(b) refers to relief from final
> orders, it does not restrict the bankruptcy court's power to reconsider any of
> its previous orders when equity so requires. *See* <u>id.</u>; <u>In re CADA Invs.</u>, 664
> F.2d at 1161; 11 U.S.C. § 105(a). The bankruptcy court can even set aside a
> stipulation entirely if the interests of justice so require and if the parties can
> be restored to the positions they occupied before they entered the stipulation.
> <u>A & A Sign Co. v. Maughan</u>, 419 F.2d 1152, 1155 (9th Cir.1969).

<u>Lenox</u>, 902 F.2d at 740. *Cf.* <u>In re Parque San Patricio, Inc.</u> No. PR 03-032, 2004 WL 601729

(B.A.P. 1st Cir. March 15, 2004) (affirming the decision of bankruptcy court where the

bankruptcy court entered an order permitting the appellants to reopen their individual

cases, but not corporate cases, and then, upon reconsideration of that order, denying

reconsideration and *sua sponte* vacating the order in so far as it permitted the reopening

of the individual cases).[8] Reconsideration of the Court's ruling that the Plaintiff established

a likelihood of success on the merits of a claim under ch. 258E is warranted for the reasons

set forth below.

<div align="center">b. The Statute</div>

Section 1 of Mass. Gen. Laws ch. 258E defines "abuse" and "harassment" as follows:

> "Abuse", attempting to cause or causing physical harm to another or placing
> another in fear of imminent serious physical harm.

> "Harassment", (i) 3 or more acts of willful and malicious conduct aimed at
> a specific person committed with the intent to cause fear, intimidation, abuse
> or damage to property and that does in fact cause fear, intimidation, abuse
> or damage to property; or (ii) an act that: (A) by force, threat or duress causes
> another to involuntarily engage in sexual relations; or (B) constitutes a
> violation of section 13B, 13F, 13H, 22, 22A, 23, 24, 24B, 26C, 43 or 43A of
> chapter 265 or section 3 of chapter 272.

Mass. Gen. Laws ch. 258E, § 1.  Section 2 provides that "[p]roceedings under this chapter

*shall be filed, heard and determined* in the superior court department or the respective

divisions of the district court department or the Boston municipal court department having

venue over the plaintiff's residence." Mass. Gen. Laws ch. 258E, § 2 (emphasis supplied).

Section 3 provides for protection from abuse or harassment, in pertinent part, as follows:

> (a) A person suffering from harassment may file a complaint in the

---

[8] The Court notes that the Debtor has filed a Notice of Appeal with respect to the
Court's January 30, 2015 order, as well as a Motion for Leave to Appeal.

appropriate court requesting protection from such harassment. A person may petition the court under this chapter for an order that the defendant:

> (i) refrain from abusing or harassing the plaintiff, whether the defendant is an adult or minor;

> (ii) refrain from contacting the plaintiff, unless authorized by the court, whether the defendant is an adult or minor;

> (iii) remain away from the plaintiff's household or workplace, whether the defendant is an adult or minor; and

> (iv) pay the plaintiff monetary compensation for the losses suffered as a direct result of the harassment; provided, however, that compensatory damages shall include, but shall not be limited to, loss of earnings, out-of-pocket losses for injuries sustained or property damaged, cost of replacement of locks, medical expenses, cost for obtaining an unlisted phone number and reasonable attorney's fees.

(b) The court may order that information in the case record be impounded in accordance with court rule.

(c) No filing fee shall be charged for the filing of the complaint. The plaintiff shall not be charged for certified copies of any orders entered by the court, or any copies of the file reasonably required for future court action or as a result of the loss or destruction of plaintiff's copies.

Mass. Gen. Laws ch. 258E, § 3(a)-(c). Other pertinent sections include section 4 ("Upon the filing of a complaint under this chapter, a complainant shall be informed that the proceedings hereunder are civil in nature and that violations of orders issued hereunder are criminal in nature. . . ."), section 5 ("When the court is closed for business or the plaintiff is unable to appear in court because of severe hardship due to the plaintiff's physical condition, the court may grant relief to the plaintiff as provided under section 5 if the plaintiff demonstrates a substantial likelihood of immediate danger of harassment.

. . ."), section 8 (which authorizes law officers to use all reasonable means to prevent further abuse or harassment, including assessment of physical danger, encouraging the victim to seek medical attention and arranging for medical assistance or transportation to a hospital), and section 10 (which provides for the confidentiality of records arising out of an action). Specifically, section 10 provides in pertinent part the following:

> The plaintiff's residential address, residential telephone number and workplace name, address and telephone number, contained within the court records of cases arising out of an action brought by a plaintiff under this chapter, shall be confidential and withheld from public inspection, except by order of the court; provided, however, that the plaintiff's residential address and workplace address shall appear on the court order and be accessible to the defendant and the defendant's attorney unless the plaintiff specifically requests that this information be withheld from the order.

Mass. Gen. Laws ch. 258E, § 10.

### c. Applicable Law

In <u>Seney v. Morhy</u>, 467 Mass. 58, 3 N.E.3d 577 (2014), the Court, referencing in <u>O'Brien v. Borowski</u>, 461 Mass. 415, 418, 961 N.E.2d 547 (2012), *abrogated on other grounds by* <u>Seney</u>, set forth pertinent background to the enactment of Mass. Gen. Laws ch. 258E. It stated:

In 2010, St. 2010, c. 23, entitled "An Act relative to harassment prevention orders," was enacted as G.L. c. 258E. <u>O'Brien</u>, 461 Mass. at 419, 961 N.E.2d 547. *The law was intended to protect victims who could not legally seek protection under G.L. c. 209A.* <u>Id.</u> Civil harassment, insofar as is relevant here, is defined as "[three] or more acts of willful and malicious conduct aimed at a specific *person* committed with the intent to cause fear, intimidation, abuse or damage to property and that does in fact cause fear, intimidation, abuse or damage to property." G.L. c. 258E, § 1.

Seney, 467 Mass. at 60 (footnote omitted, emphasis supplied).[9]  The court, again citing in

O'Brien v. Borowski, 461 Mass. at 418, observed that "a *person* seeking a protective order

pursuant to G.L. c. 209A could seek relief of abuse from "an adult or minor family or

household member." Seney, 467 Mass. at 60, n.3.  On the other hand, "[c.] 258E was enacted

---

[9]  Chapter 209A, the Abuse Prevention Statute is one of a number of statutes concerning domestic relations.

> Virtually all aspects of domestic relations in Massachusetts are governed by chapters 207 through 210 of the General Laws of Massachusetts. These chapters deal with marriage, divorce, real and personal property relations between husband and wife, abuse prevention, child custody jurisdiction, children born out of wedlock, and adoption of children.

> The Abuse Prevention statute, in general terms, provides for the issuance of protective orders to ensure the safety and security of adults and minor children. This chapter of the General Laws also criminalizes the violation of such orders. These protective orders may require a party to vacate the family household and to cease and desist from any contact with his or her current or former spouse, housemate, current or former fiance, substantive date, or minor child. Such orders may also be issued during a divorce, a continuing marriage in which the parties are living apart, or a paternity proceeding.  In addition to these protective orders there are provisions of the divorce laws which criminalize fraudulent behavior related to the institution or conduct of a divorce proceeding, or to the issuance of a divorce decree. There are separate statutory provisions directed solely toward preventing the abuse or neglect of children, handicapped persons, and elderly persons.

John P. Zanini, *Overview of Mass. Gen. Lc. ch. 209A, the Abuse Prevention Statute, and the Prosecutorial Role of the District Attorney's Office*, 28 New Eng. L. Rev. 261-62 (1993).  In Palumbo v. Tusino, 29 Mass. L. Rptr. 125, 2011 WL 5925548 (Mass. Super. Nov. 10, 2011), the court stated: "'The legislative history of c. 258E discloses an intent to expand the categories of victims entitled to protection from harassment beyond those with relationships covered by G.L. c. 209A, while "implement[ing] a standard higher than that required for the issuance of an abuse prevention order.' Elissa Flynn–Poppey & Stefanie Guiliano Abhar, *Chapter 258E Harassment Prevention Orders–Balancing the Rights of Victims and Defendants*, 94 Mass. L.Rev. 23, 23–25 (2011)."

in 2010 to allow *individuals* to obtain civil restraining orders against persons who are not

family or household members." <u>Seney</u>, 467 Mass. at 60, n.4 (citing <u>O'Brien</u>, 461 Mass. at

419).

The court in <u>Seney</u> elaborated on the nature of the relief afforded under ch.258E.  It

observed:

> The proceedings for harassment prevention orders are civil in nature. When considering a complaint for such an order, the judge must review records of the Statewide domestic violence recordkeeping system and the court activity record information system. G.L. c. 258E, § 9. If the judge issues a harassment prevention order, information concerning the order is transmitted to the probation department for filing in those systems or in a system that records such orders. <u>Id.</u> *Violations of harassment prevention orders, however, are criminal offenses*. The law also mandates that, if a judge vacates a harassment prevention order, law enforcement officials shall destroy "all record" concerning such order. <u>Id.</u>

<u>Seney</u>, 467 Mass. at 60-61 (footnotes omitted, emphasis supplied).[10]

In <u>O'Brien v. Borowski</u>, 461 Mass. 415 (Mass. 2012), *abrogated on other grounds by*

<u>Seney v. Morhy</u>, 467 Mass. 58 (2014), the Supreme Judicial Court determined that an

essential element of civil harassment is intent and that conduct may constitute civil

harassment where an individual wilfully and maliciously uses "fighting words" that are

"a direct personal insult addressed to a person" and "so personally abusive that they are

plainly likely to provoke a violent reaction and cause a breach of the peace," <u>id.</u> at 423, or

---

[10] Pursuant to Mass. Gen. Laws ch. 258E, §§ 4,9, violations of a civil harassment order are "punishable by a fine of not more than $5,000, or by imprisonment for not more than 2½ years in a house of correction, or both," and payment of other fees and assessments, as well as the potential of a court order that the defendant pay certain damages, including attorney's fees, to the plaintiff.

25

uses "true threats," such as "words or actions that—taking into account the context in

which they arise—cause the victim to fear such harm now or in the future." Id. at 425. The

conduct must have been intended to cause, and must actually cause, abuse (defined as

"attempting to cause or causing physical harm to another or placing another in fear of

imminent serious physical harm"), intimidation, fear of personal injury, or damage to

property. Id. at 427 (quoting Mass. Gen. Laws ch. 258E, § 1). The target of the harassment

must have experienced an "entire course of harassment," the whole of which caused fear

or intimidation amounting to more than "a fear of economic loss, of unfavorable publicity,

or of defeat at the ballot box." O'Brien, 461 Mass. at 426 n. 8, 427, 961 N.E.2d 547.[11]

---

[11] In O'Brien, the court stated:

General Laws c. 209A, inserted by St.1978, c. 447, § 2, enables a person
"suffering from abuse from an adult or minor family or household
member" to obtain a protective order directing the defendant, among
other things, to refrain from the abuse. G.L. c. 209A, § 3. "Abuse" is
defined as "the occurrence of one or more of the following acts between
family or household members: ( a ) attempting to cause or causing
physical harm; ( b ) placing another in fear of imminent serious physical
harm; ( c ) causing another to engage involuntarily in sexual relations by
force, threat or duress." G.L. c. 209A, § 1. The violation of an abuse
prevention order is a crime, punishable by a fine or imprisonment in a
house of correction. G.L. c. 209A, § 7.

A person who is abused by someone other than a "family or household
member" does not qualify for a protective order under c. 209A and could
obtain a restraining order only by seeking injunctive relief in the Superior
Court under Mass. R. Civ. P. 65, 365 Mass. 832 (1974). Violation of such a
restraining order may constitute a contempt of court, but is not a crime.
Mass. R. Civ. P. 65.3, as appearing in 386 Mass. 1244 (1982).

Chapter 258E was enacted in 2010 to allow individuals to obtain civil
restraining orders against persons who are not family or household

d. Analysis

The foregoing review of Mass. Gen. Laws ch. 258E compels this Court to reconsider

its ruling that the Plaintiff has established a likelihood of success on the merits of a claim

under Mass. Gen. Laws ch. 258E.   Indeed, the Court concludes that the Plaintiff in its

Amended Complaint has failed to state a plausible claim to relief under the two-part test

adopted by the First Circuit in Schatz v. Republican State Leadership Comm., 669 F.3d 50

(1st Cir. 2012).  In the alternative ,and assuming uncertainties associated with application

of the statute to the facts of this case, abstention is warranted.  *See* 28 U.S.C. § 1334(c)(1).

In the first place, section 2 of ch. 258E governing  jurisdiction under the statute

mandates that "[p]roceedings . . .  be filed, heard and determined in the superior court

department or the respective divisions of the district court department or the Boston

municipal court department."  *See* Mass. Gen. Laws ch. 258E, § 2. Thus, the Landworks

Creations, LLC case cited by the Plaintiff is distinguishable. *See* note 7, *supra*.[12]

---

members, and to make the violation of those orders punishable as a crime.
See An Act Relative to Harassment Prevention Orders, Formal House
Session January 28, 2010 (statements of Representatives O'Flaherty,
Atkins, Jones, Swan). But while a protective order under c. 209A requires
a finding of "abuse," a protective order under c. 258E requires a finding of
"harassment," defined in G.L. c. 258E, § 1, as "[three] or more acts of
willful and malicious conduct aimed *at a specific person* committed with the
intent to cause fear, intimidation, abuse or damage to property and that
does in fact cause fear, intimidation, abuse or damage to property."

O'Brien, 461 Mass. at 418-19 (footnote omitted).

[12] The Plaintiff also cited MCI Telecommunications Corp. v. Teleconcepts, Inc., 71
F.3d 1086, 1109 (3d Cir. 1995), a case in which the court remanded the determination of

In the second place, violations of ch. 258E are criminal offenses which would require the Plaintiff to file a criminal complaint to obtain a remedy for violation of any order this Court might enter.  Thus, this Court would be unable to enforce its own order under Mass. Gen. Laws ch. 258E.

In addition, and most significantly in view of the language of the statute and the decisions of the Supreme Judicial Court in Seney and O'Brien, the Court questions the standing of the Plaintiff, a limited liability company, to bring an action for harassment

---

liability to the district court for transfer to the Pennsylvania Utilities Commission and, among other rulings, determined that under the doctrine of primary jurisdiction the district court was precluded from deciding the merits of a liability issue on a third-party claim, and that the court was required to transfer the claim to the Pennsylvania Public Utility Commission for determination of liability and then make any award to the owner. Specifically, Patriot cited the concurring opinion in which the judge stated:

> A state legislature may also limit the jurisdiction of its own state's courts by enacting a statute vesting exclusive primary jurisdiction in a state board or agency, subject of course to the strictures of state law and the due process requirements of the Fourteenth Amendment. Thus, I have no quarrel with the majority's conclusion that a Pennsylvania state court would have no power to hear this claim.
>
> ***
>
> It does not follow, however, that a state may by statutory or decisional law restrict the subject matter jurisdiction of the federal courts. It is axiomatic that, because federal subject matter jurisdiction can be conferred or withdrawn only by Congress, a federal court must look only to federal, not state, law to determine whether that jurisdiction exists, even when the substantive right at issue is a creature of state law.

71 F.3d at 1109 (citations omitted).

under ch. 258E.[13]  The Court's review of the statute compels the conclusion that the relief

available under the statute is limited to natural persons.  In other words, limited liability

companies, corporations, and partnerships do not appear to be within the class of plaintiffs

for whom protection from abuse and harassment is available.  For example, section 3(a) of

---

[13] In <u>In re Hayes</u>, 393 B.R. 259 (Bankr. D. Mass. 2008), this Court set forth the law
applicable to standing. It stated:

> Standing is a "threshold question in every federal case, determining the
> power of the court to entertain the suit." <u>Warth v. Seldin</u>, 422 U.S. 490, 95
> S.Ct. 2197, 45 L.Ed.2d 343 (1975). Hence, "a defect in standing cannot be
> waived; it must be raised, either by the parties or by the court, whenever it
> becomes apparent." <u>U.S. v. AVX Corp.</u>, 962 F.2d 108, 116 n.7 (1st Cir.
> 1992).
>
> The inquiry into standing "involves both constitutional limitations on
> federal-court jurisdiction and prudential limitations on its exercise."
> <u>Warth</u>, 422 U.S. at 498, 95 S.Ct. 2197, 45 L.Ed.2d 343. "In its constitutional
> dimension, standing imports justiciability: whether the plaintiff has made
> out a 'case or controversy' between himself and the defendant within the
> meaning of Art. III." <u>Id.</u> Apart from this minimum constitutional mandate,
> the Supreme Court recognizes other limits ". . . on the class of persons
> who may invoke the courts' decisional remedial powers." <u>Id.</u> at 499, 422
> U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343. These prudential limitations are
> self-imposed rules of judicial restraint:
>
> > These considerations, which militate against standing,
> > principally concern whether the litigant (1) asserts the rights
> > and interests of a third party and not his or her own, (2)
> > *presents a claim arguably falling outside the zone of interests*
> > *protected by the specific law invoked*, or (3) advances abstract
> > questions of wide public significance essentially amounting
> > to generalized grievances more appropriately addressed to
> > the representative branches.

<u>In re Hayes</u>, 393 B.R. at 266–67 (citing <u>In re Newcare Health Corp.</u>, 244 B.R. 167 (1st Cir.
BAP 2000), and <u>In re Shamus Holdings, LLC</u>, No. 08–1030–JNF, 2008 WL 3191315
(Bankr.D.Mass. Aug. 6, 2008) (emphasis supplied).

ch. 258E refers to a "person" suffering from harassment and authorizes the payment of monetary compensation which "shall include, but shall not be limited to, loss of earnings, out-of-pocket losses for injuries sustained or property damaged, cost of replacement of locks, medical expenses, cost for obtaining an unlisted phone number and reasonable attorney's fees."   Although the statute does not define "person," the legislative history's reference to Mass. Gen. Laws ch. 209A also supports the conclusion that only natural persons can seek relief under the statute.   As the Supreme Judicial Court stated: "[c.] 258E was enacted in 2010 to allow *individuals* to obtain civil restraining orders against persons who are not family or household members." Seney, 467 Mass. at 60, n.4 (emphasis supplied).   In addition, sections 5, 8, and 10 of Mass. Gen. Laws ch. 258E also support the conclusion that the statute was enacted to provide relief to natural persons, not limited liability companies such as the Plaintiff, due to references to the plaintiff's "physical condition," the plaintiff's need for "medical attention," and the confidentiality of plaintiff's "residential address," and "residential telephone number."   Patriot is not an individual, and, although the Amended Complaint references Mr. Howe and his family, none are Plaintiffs in this action.

Finally, abuse is defined as "attempting to cause or causing physical harm to another or placing another in fear of imminent serious physical harm," Mass. Gen. Laws ch. 258E, §1, and harassment is defined as "(i) 3 or more acts of willful and malicious conduct aimed at a *specific person* committed with the intent to cause fear, intimidation, abuse or damage to property and that does in fact cause fear, intimidation, abuse or damage to property; or

(ii) an act that: (A) by force, threat or duress causes another to involuntarily engage in sexual relations . . . ." Id. As a practical matter, it is difficult to perceive how a limited liability company such as Patriot, as opposed to a natural person, could experience fear, and, in particular, fear of imminent serious physical harm, or be intimidated. Certainly the members or managers of such an entity if they are natural persons could experience fear or abuse, but not the limited liability company itself. Unlike the Bankruptcy Code, Mass. Gen. Laws ch. 258E does not define person to include a partnership or corporation. Cf. 11 U.S.C. § 101(41).

For the foregoing reasons, this Court concludes that Patriot failed to state a plausible claim for relief under Mass. Gen. Laws ch. 258E. Alternatively, the Court sua sponte abstains as a determination of whether ch. 258E pertains to Patriot is best left to the courts with the statutorily mandated jurisdiction.

2. Count III

Pursuant to Count III, Patriot seeks declaratory relief under 28 U.S.C. § 2201 and Fed. R. Bankr. P. 7001(d) with respect to violations of the Plaintiff's rights under 11 U.S.C. §§ 303(b), 523(c), and 727(c) as set forth above. The Court concludes that Count III fails to state a plausible claim for relief and any issues relative to Count III are best addressed in conjunction with the Plaintiff's pending adversary proceeding (Adv. P. No. 14-1193) through which it seeks, together with 50 Thomas Patton Drive LLC, an exception to the Debtor's discharge under § 523(a)(2), (a)(4) and (a)(6) and denial of the Debtor's discharge under § 727(a)(2)(A), (a)(2)(B), (a)(3), (a)(4), and (a)(5). The declarations sought are

conclusory statements of the obvious; no court would rule that the Debtor had a right to publish defamatory statements or the right to harass and intimidate the Plaintiff or interfere with a creditor's right to proceed in a bankruptcy case or adversary proceeding. Accordingly, the Court shall dismiss Count III.

3. Count I

As the Court has determined that dismissal of Counts II and III is warranted or alternatively abstention with respect to Count II is warranted, the Court must address Count I through which the Plaintiff seeks injunctive relief. The Court concludes that the Debtor is correct in asserting that Count I merely sets forth a request for a remedy and does not state a cause of action. "[I]njunctive relief is not a stand-alone cause of action under Massachusetts or federal law." Payton v. Wells Fargo Bank, N.A., No. No. 12-11540-DJC, 2013 WL 782601 (D. Mass. Feb. 28, 2013) (citing Wentworth Precious Metals, LLC v. City of Everett, No. 11–10909–DPW, 2013 WL 441094, at *15 (D. Mass. Feb.4, 2013); Diamond Phoenix Corp. v. Small, No. 05–79–P–H, 2005 WL 1530264, at *4 (D. Me. June 28, 2005); Unitrode Corp. v. Linear Tech. Corp., No. 98–5983, 2000 WL 281688, at *5 (Mass. Super. Ct. Feb. 17, 2000)). For that reason alone, Count I may be dismissed for failure to state a plausible claim.

Nevertheless, even if the Court were to conclude that Count I sets forth a cause of action, abstention is warranted in view of the causes of action and remedies available under federal and state law. In determining its core jurisdiction, this Court focused on enjoining the Debtor's egregious conduct in interfering with matters involving the administration of

32

the bankruptcy estate, namely the Debtor's litigation misconduct as well as his affront to

the integrity of the bankruptcy process and this Court.  Nevertheless, the Debtor is correct

in his observation that the outcome of the adversary proceeding will not have any effect

on the actual recovery or disposition of assets of the bankruptcy estate.  Moreover, the

Court notes that any intended intimidation  by the Debtor had no effect on Patriot's

Complaint under 11 U.S.C. §§ 523 and 727 as that adversary proceeding remains pending

and continues to be prosecuted by Patriot.

In addition, while the Plaintiff has sought to depict the Debtor's conduct as within

the purview of Mass. Gen. Laws ch. 258E, § 3(a), the Court cannot ignore the Plaintiff's

references to the publication of "false, malicious, *defamatory* and untrue articles about

plaintiff . . . ." Although this Court observed in its Memorandum dated January 30, 2015

that "Patriot made clear in its post-hearing brief that it is not seeking damages for or to

enjoin defamation, but rather is seeking to restrain harassment that violates Massachusetts

law," *see* In re Fustolo, 2015 WL 411760 at *2, n.3, this Court also noted that "[t]he

provisions of 28 U.S.C. § 157(b)(5) . . . provide that personal injury tort claims must be tried

in the district court and not the bankruptcy court. . . ."  Id.   In view of the Court's

determination that Count II fails to state a plausible claim for relief under Mass. Gen. Laws

ch. 258E and, alternatively, to abstain, and the dismissal of Count III, the Court is

compelled to observe that the Plaintiff's cause of action, and any causes of action involving

Mr. Howe and members of his family related to defamatory publications, may involve tort

claims for defamation that arise under state law. *See generally* Marc G. Perlin and Steven H.

33

Blum, *Defamation*, 10 Mass. Prac., Procedural Forms Annotated, § 28:1 (2014). In view of the multiple defendants other than the Debtor, this Court is not the proper forum for adjudicating claims among non-debtors.

Turning to other factors pertinent to a decision to abstain, the Court notes that Patriot commenced an action in the Circuit Court for the Seventh Judicial District in Miami-Dade County Florida, Case No. 16-2014-CA-008673, *see* Amended Complaint at ¶ 9. In addition, according to the Debtor, Patriot's principal and parent entity commenced a lawsuit, on December 9, 2014, in the U.S. District Court for the District of Massachusetts, captioned Old Hill Partners, Inc., et al. v. John Does 1–40, Case No. 1:14-cv-14366-IT in which they made substantially similar allegations. In response to an order to show cause for lack of federal diversity jurisdiction, the plaintiffs voluntarily dismissed the action without prejudice on January 16, 2015. In view of this history, and the presence of multiple third parties, and the Plaintiff's demonstrated ability to seek relief in other forums, abstention is warranted.

**V. CONCLUSION**

In view of the foregoing, the Court shall enter an order dismissing the Plaintiff's

Amended Complaint.  In the alternative, the Court abstains from the determination of

Counts I and II of this adversary proceeding.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated:  March 24,  2015